## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-598** |
| **v.** | : | |
| | : | **FILED UNDER SEAL** |
| **TERRENCE SUTTON, and** | : | |
| **ANDREW ZABAVSKY** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' OMNIBUS OPPOSITION TO
### DEFENDANTS' MOTIONS TO DISMISS

The United States of America respectfully opposes the defendants' motions to dismiss the Indictment (Sutton Mot., ECF 185; Zab. Mot., ECF 187; Sutton 2d Mot., ECF 188).  Defendants Terrence Sutton and Andrew Zabavksy both contend that the Indictment should be dismissed for failure to state an offense, lack of specificity, and for prosecutorial misconduct before the grand jury. Defendant Zabavsky further argues for dismissal on grounds of selective prosecution.  The Indictment pleads facts and allegations sufficient to state an offense, no misconduct occurred before the grand jury, and defendant Zabavsky falls far short of establishing selective prosecution. Because the defendants' arguments are based upon misstatements of fact and the misapplication of applicable law, the motions should be denied.

### PROCEDURAL HISTORY

The Indictment charges defendant Sutton with second degree murder, in violation of D.C. Code § 22-2103, and both defendant Sutton and defendant Zabavsky with conspiring to obstruct, and obstructing, a federal investigation into the circumstances of that murder, in violation of 18 U.S.C. §§ 371 and 1512(b)(3).  These charges arise from an October 23, 2020 incident in which defendant Sutton, who was on-duty as an Metropolitan Police Department (MPD) Crime Suppression Team (CST) officer, pursued Karon Hylton-Brown in an undercover MPD squad car.

Co-defendant Zabavsky, defendant Sutton's commanding MPD Lieutenant, was initially involved in the pursuit.  They both later justified pursuing Hylton-Brown on the basis that he was operating a moped without a helmet.

The chase ended after defendant Sutton followed Hylton-Brown into an alley, turned off his squad car's emergency lights and siren, and accelerated behind Hylton-Brown.  When Hylton-Brown reached the street at the mouth of the alley, he was struck by an oncoming motorist.  The final two minutes of the chase, and the sudden collision that ended it, were captured on the body-worn camera (BWC) of defendant Sutton's front-seat passenger, Officer Carlos Tejera.  *See* Ex. 1 (Tejera BWC clip).  Hylton-Brown sustained grievous injuries in the collision and died a short time later.  At the collision scene and back at the Fourth District police station, defendant Sutton conspired with defendant Zabavsky to cover up the circumstances of the chase and crash to avoid all investigation into the incident.  All told, the crimes charged in the Indictment were completed in a period spanning several hours, from just after 10:00 pm on the evening of October 23, 2020, into the early morning hours of October 24, 2020.

Both defendants now move to dismiss the Indictment.  Defendant Sutton argues that the Indictment should be dismissed pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense, lack of specificity, and because of error in the grand jury proceedings due to alleged prosecutorial misconduct, pursuant to Fed. R. Crim. P. 12(b)(3)(A)(v).  Defendant Zabavsky asserts that the Indictment should be dismissed for lack of specificity, failure to state an offense, selective prosecution, and for error before the grand jury, pursuant to Fed. R. Crim. P. 12(b)(3)(A)(iv), (b)(3)(A)(v), (b)(3)(B)(iii), and (B)(3)((b)(v).  As explained below, because both defendants' motions fall far short of establishing a basis for dismissal under any applicable legal framework, their motions should be denied.

2

# ARGUMENT

## I.   THE CHARGES IN THE INDICTMENT PROPERLY ALLEGE CRIMINAL OFFENSES UNDER RULE 12(B)(3)(b)(v)

### a.   Where the Indictment Contains Allegations That, If Proven True Establish a Criminal Offense, There Is No Basis for Dismissal

"An indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 705 F.3d 138, 148-49 (D.C. Cir. 2015) (cleaned up).  A defendant may move to dismiss an indictment or a count thereof for failure to state a claim prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  In assessing such a motion, "[a]n indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged.  *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.  *Id.*  This review "is limited 'to the four corners of the indictment.'"  *United States v. Andries*, 2022 WL 768684, at *2 (D.D.C. March 14, 2022) (quoting *United States v. Ring*, 628 F.Supp.2d 195, 204 (D.D.C. 2009)).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

### b.   Count One of the Indictment Properly Alleges the Crime of Second-Degree Murder

Defendant Sutton seeks dismissal of Count One for failure to state an offense because, he claims, (1) the Indictment does not properly allege the causation element of second degree murder,

(2) an on-duty police officer cannot be charged with a criminal offense unless the alleged conduct also violated the U.S. Constitution, and (3) he lacked fair notice that he could be charged with murder under D.C. law.  These arguments are premised on a misapplication of applicable law, and therefore should be denied.[1]

Count One alleges that defendant Sutton killed Hylton-Brown by causing a fatal traffic collision in the course of an unauthorized police pursuit of Hylton-Brown.  The offense of second degree murder makes it a crime to "kill[] another" "with malice aforethought." D.C. Code § 22-2103 (2012 Repl.).

Proof that the defendant "kill[ed] another" requires establishing that the defendant "caused the death of" another.  *See*, *e.g.*, *Fleming v. United States*, 214 A.3d 213, 220 (D.C. 2020) (noting causation as a requirement that "this court has frequently expressed" to prove second degree murder); *Williams v. United States*, 52 A.3d 25, 31 (D.C. 2012) (elements of second degree murder require that the defendant "caused the death of the victim").  The Supreme Court in *Burrage v. United States*, 571 U.S. 204, 134 S.Ct. 881 (2014), provided a general framework for analyzing causation in the criminal context:

> The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. When a crime requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the legal cause (often called the proximate cause) of the result.

571 U.S. at 210, 134 S.Ct. 881 (citation and internal quotation marks committed).  The Court in *Burrage* went on to explain that actual causation "[i]n the usual course … requires proof that the harm would not have occurred in the absence of —that is, but for—the defendant's conduct."  *Id.*

---

[1] As the defendant has asserted this argument before in several discovery-related motions, the government incorporates by references the arguments advanced in the Government's Opposition to Defendant Sutton's Fifth Motion to Compel Disclosure of Requested Discovery (ECF 165).

at 211.  The D.C. Court of Appeals has explained that, in the context of second degree murder, proof of actual causation is shown "if one subtracted the defendant's actions from the chain of events, the decedent would not have been killed."  *Fleming*, 224 A.3d at 221.

For proximate cause, criminal culpability results "for all harms that are reasonably foreseeable consequences of his or her actions."  *Blaize v. United States*, 21 A.3d 78, 81 (D.C. 2011) (when an intervening action is not happenstance or unrelated to the defendant's course of conduct and, instead, a response to that conduct, "[p]roximate cause is drawn more broadly"); *United States v. Pineda-Doval*, 614 F.3d 1019, 1028 (9th Cir. 2010) ("Generally a police officer's conduct in pursuing a fleeing perpetrator, even if it was negligently performed and resulted in the death of the officer or a third party, is not deemed conduct so unusual, abnormal or extraordinary as to constitute [a] superseding cause").  "Foreseeability is required as to the former, but in the latter instance the question is whether the intervening act was abnormal—that is, whether, looking at the matter with hindsight, it seems extraordinary." 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5(d), at 453 (2d ed.2003).  Criminal liability can therefore attach from "causing a result that would not have occurred but for the reasonably foreseeable acts of another."  *Fleming*, 224 A.3d at 225 (assessing the causation requirement for second degree murder).

As this Court has recognized, the element of "malice aforethought" can be satisfied in multiple ways.  *See* Opinion, at 20 (Apr. 22, 2022) (citing *Jennings v. United States*, 993 A.2d 1077, 1080 (D.C. 2010)).  Malice aforethought is proven where a defendant subjectively knew that his conduct "created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless," *id*. (quoting *Williams v. United States*, 858 A.2d 984, 998 (D.C. 2004)), and where "'conduct is reckless and wanton, and a gross deviation from a reasonable standard of care, or [of] such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of

5

death or serious bodily harm.'" *Id*. (quoting *Comber v. United States*, 584 A.2d 26, 39 (D.C. 1990) (en banc)).

Given this legal framework, and accepting the facts contained in the Indictment as true, Count One properly alleges a second degree murder charge against defendant Sutton.

i. Count One Properly Alleges Causation

Taken as true, the facts in the Indictment properly allege that defendant Sutton caused Hylton-Brown's death by driving in a fashion that consciously disregarded an extreme risk of death or serious injury to Hylton-Brown. The Indictment alleges that defendant Sutton attempted to conduct a traffic stop on Hylton-Brown after seeing him commit minor traffic infractions, including driving without a helmet, and driving on the sidewalk. Indictment, ¶ 10. When Hylton-Brown did not stop, both defendants initiated a police pursuit of Hylton-Brown, even though MPD policy, with which both defendants were familiar, expressly prohibited vehicular pursuits for this purpose. *Id*. ¶¶ 8, 10. After initially taking the lead car position, defendant Zabavsky broke from the pursuit and took a different path in an attempt to intercept Hylton-Brown while defendant Sutton continued behind Hylton-Brown. *Id*. ¶¶ 26(a), 26(c).

The pursuit lasted for more than three minutes, traveling through ten blocks of neighborhood streets, during which time defendant Sutton accelerated to more than double the speed limit, reaching 45 mph at one point. *Id*. ¶ 11. The chase continued through two alleyways and the wrong way up two separate one-way streets. *Id*. ¶¶ 26(c), 26(g). Defendant Sutton drove through seven "STOP" signs. *Id*. ¶ 26(e). In the first alleyway, defendant Sutton reached a top speed of 40 mph. *Id*. ¶ 26(g). Multiple times, when Hylton-Brown remained at a slow or stopped pace, defendant Sutton accelerated toward him and then slammed on the brakes to avoid colliding with him. Id. ¶ 26(f). Defendant Sutton used his police car's emergency lights and sirens only

intermittently throughout the chase. *Id*. ¶ 26(h).  In the final ten seconds of the chase, defendant Sutton followed Hylton-Brown into a narrow alleyway, turned off his emergency lights and siren, and accelerated to 26 mph behind Hylton-Brown, which closed the distance between their vehicles as Hylton-Brown approached the alleyway's exit into Kennedy Street. *Id*. ¶¶ 13, 27.  Immediately upon entering Kennedy Street, Hylton-Brown was struck by an oncoming car, mortally wounding him. *Id*. ¶ 13, 14, 18, 28.

These facts, taken at this stage as true, establish that defendant Sutton's actions were the actual and proximate cause of Hylton-Brown's death.  While he asserts that no jury could find that he caused Hylton-Brown's death because he did not directly strike the moped (ECF 188 at 7-8), that argument ignores the applicable legal standard for causation.  The allegations in the Indictment establish that "if one subtracted the defendant's actions from the chain of events, the decedent would not have been killed," which meets the test for actual causation.  *See Fleming*, 224 A.3d at 221 (establishing this test for actual causation for second-degree murder); *see also District of Columbia v. Hawkins*, 792 A.2d 293, 302-03 (D.C. 2001) (finding an officer's acceleration behind a fleeing motorist to be "a catalyst" for the motorist to drive faster); *Duggan v. District of Columbia*, 783 A.2d 563, 570 (D.C. 2001) (noting that an officer's acceleration behind a fleeing motorist had the effect of "giving no opportunity to stop and flee and pressing him to drive fast and recklessly").

The factual allegations in the Indictment also satisfy proximate causation.  Here, the defendant's driving decisions exposed Hylton-Brown to a risk of being hit by another car that grew more foreseeable as the pursuit continued one block and minute after the next, and as defendant Sutton's driving grew more and more aggressive.  The risk of serious injury or death to Hylton-Brown was especially clear since he was not wearing a helmet (which defendant Sutton knew from

the outset, since he initially tried to pull him over that traffic infraction).  The defendant's driving decisions throughout the chase, and particularly in the final ten seconds after he turned off his emergency equipment and accelerated behind Hylton-Brown through the alleyway, flushing Hylton-Brown out onto Kennedy Street, "caus[ed] a result that would not have occurred but for the reasonably foreseeable acts of another." *Fleming*, 224 A.3d at 225; *see*, 1 LaFave § 6.4(b), at 636 ("[O]ne who hastens the victim's death is a cause of his death").  Count One thus properly alleges causation.

The defendant asserts that, "As a matter of law, no police officer following a fleeing suspect can be criminally liable for the death of the suspect who negligently drives in front of a third vehicle."  ECF 188 at 10.  While the defendant can argue to the jury that he was not, in fact, the cause of Hylton-Brown's death, his argument as asserted here misstates the law of causation and, as discussed in the next section, relies on constitutional case law that is inapplicable in this context.  The Indictment alleges driving decisions by defendant Sutton—especially in the final alleyway— that made a collision with an unwitting third driving past the alleyway's exist a reasonably foreseeable result.  This sufficiently alleges causation.

Defendant Sutton asserts that the MPD Major Crash Unit's (MCU) finding that he did not cause the crash is dispositive of his motion.  ECF 188 at 7. This argument is misguided, for two reasons.  First, it ignores the applicable legal standard, which limits review of a motion to dismiss to the allegations contained in the four corners of the Indictment.  *Ring*, 628 F.Supp.2d 195, 204.  Second, it takes the MCU finding wholly out of context.  MCU's conclusion is not a legal conclusion but a factual determination that defendant Sutton did not directly strike Hylton-Brown's moped.  That determination does not vitiate legal causation so long as defendant Sutton's driving was a "but-for" and proximate cause of the crash—which, as alleged in Count One, it was.

Moreover, reliance on MCU's conclusion is even less appropriate here because of defendant Sutton's obstructive acts at the crash scene, which, as alleged in the Indictment, obscured the truth from the MCU investigation.

Defendant Sutton's remaining arguments are similarly meritless. His claim that his driving was justified because it was done to ensure public safety also provides no basis for dismissal. ECF 188 at 16. While the defendant can pursue this claim as a defense at trial, this argument ignores the applicable legal standard for a motion to dismiss. Based on the facts alleged in the Indictment, the defendant's driving created the very risk to Hylton-Brown's safety—a traumatic and fatal head injury—that the helmet ordinance he supposedly sought to enforce was designed to protect against happening. The defendant's decision to pursue Hylton-Brown in the manner alleged in the Indictment, and absent any genuine or actual urgency, establishes the defendant's "conscious indifference to the rights and safety of others" that is criminalized by this charge.

Finally, defendant Sutton's claim that he could not have caused an accident because he was "directed" by defendant Zabavsky to pursue Hylton-Brown also does not provide a ground for dismissal. ECF 188 at 1. This argument relies on facts that are outside the Indictment, and therefore are not within the proper scope of a motion to dismiss. Moreover, even if this claim were true (which the government disputes), defendant Zabavsky could not have given defendant Sutton license to carry out the pursuit in a fashion that broke the law, nor would it have been reasonable for defendant Sutton to believe as much.

      ii.  <u>The Government is Not Required to Allege a Constitutional Violation to Charge Defendant Sutton With Violating a District of Columbia Criminal Statute</u>

Defendant Sutton also asserts that regardless of whether his driving caused Hylton-Brown's death, he "is relieved from criminal liability because his actions did not violate the

constitutional rights of Hylton Brown."  ECF 188 at 10; *see also* ECF 150 at 9.  While such an allegation would be required to state an offense under 18 U.S.C. § 242, which criminalizes willful constitutional violations under color of law, the Indictment in this case contains no such charge— and therefore, no such allegation is needed.  Moreover, defendant Sutton's assertion that he can only be held criminally liable for constitutional violations is a misstatement of the law, as any jurisdiction can establish additional legal requirements above constitutional minimums for any person's conduct, including (and perhaps especially) those individuals in whom the state vests its police powers.

As explained in the Government's Opposition to Defendant Sutton's Fifth Motion to Compel (ECF 165), various District statutes and ordinances define the bounds of permissible conduct by city employees when operating under the color of law.  For example, District Municipal Regulations (DCMR) and Code provisions establish the driving rules for police officers during emergencies.  In particular, 18 DCMR § 2002.1(b) gives officers certain traffic code exemptions "when in pursuit of an actual or suspected violator of the law."  This includes the ability to disregard traffic control signals, parking signs, direction of movement regulations, and speed limits.  18 DCMR § 2002.2.  Despite the defendant's claim that these rules only apply in the civil tort context (ECF 188 at 19), nothing in the language of the regulation suggests such a limitation; indeed to the contrary, the regulation expressly states that "the provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall these provisions protect the driver from the consequences of his reckless disregard for the safety of others."  18 DCMR § 2002.4.  Similarly, the D.C. Code puts officers on notice that they will not be given governmental immunity if their grossly negligent driving in an emergency vehicle causes someone's death.  D.C. Code § 2-412 (prohibiting the

assertion of a governmental immunity defense for all cases of gross negligence "in the case of a claim arising out of the operation of an emergency vehicle on an emergency run").

The government agrees with defendant Sutton's assertion that his "duty to protect the public is of paramount importance," ECF 188 at 16, but it must be carried out within the bounds of the law.  As longstanding principles of federalism provide, the U.S. Constitution sets the floor for that standard, which may be supplemented and heighted by the District of Columbia's own requirements.  *See United States v. Morrison*, 529 U.S. 598, 627 (2000); *United States v. Lopez*, 514 U.S. 549, 567 (1995); *see also* ECF 165 at 8-9.  Here, those additional boundaries were set by applicable District law, municipal regulations, applicable caselaw concerning officers' driving, and were further informed by the training defendant Sutton (and defendant Zabavsky) received on these topics from MPD, as well as relevant MPD policies by which, as an MPD member officer, he had been directed to abide.

Defendant Sutton's claim that none of these rules apply to his conduct rests on a misapplication of legal precedents concerning constitutional violations.  Indeed, the cases he relies upon—*Scott v. Harris*, 550 U.S. 372 (2007), *Plumhoff v. Rickard*, 572 U.S. 765 (2014), *Mullenix v. Luna*, 577 U.S. 7 (2015)—concern whether an officer's conduct in seizing the victim in the course of a high-speed chase constituted an excessive use of force under the Fourth Amendment.  ECF 188 at 12.  Because alleged Fourth Amendment violations of that type are judged under an objective reasonableness standard that balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," *Harris*, 550 U.S. at 383, the Court applied that standard in those

cases.[2]  The government does not dispute that those precedents set the constitutional standard for officers' use of force to seize civilians in high-speed chases; indeed, if defendant Sutton were charged with violating 18 U.S.C. § 242, these cases would be relevant here.  Here, however, no such seizure is alleged.  As a result, those precedents simply do not speak to the applicable legal standard, which is instead applied by D.C.'s own proscriptions on an officer's on-duty conduct.

The defendant's related assertion that his conduct cannot be prosecuted because "Hylton-Brown surrendered his Fourth Amendment rights when he chose not to stop for a lawful traffic stop" is similarly misguided and, in any event, irrelevant.  ECF 188 at 12. While an officer's use of force, or warrantless intrusion into a person's home, or other type of seizure may be permitted under the Fourth Amendment given the applicable circumstances, it is not possible for a person to "surrender" his constitutional rights.  Indeed, the defendant cites no cases that hold as much. Instead, as one of the cases cited by the defendant explains, a case-by-case analysis of the facts and circumstances that balances the civilian's Fourth Amendment rights against the need for the governmental intrusion is generally required to determine whether a Fourth Amendment violation has occurred.  *Lange v. California*, 141 S.Ct. 2011, 2021-22 (2021) (addressing this in the context of exigent circumstances for warrantless searches of fleeing misdemeanant suspects' homes, and requiring a case-by-case assessment because "the need to pursue a misdemeanant does not trigger a categorical rule allowing home entry").  Moreover, this argument is irrelevant, as no constitutional violation is alleged here, nor is such an allegation required to prosecute the defendant for conduct that separately violates D.C. law.

---

[2] This balancing test, in turn, requires considering the risk of harm that officer's actions posed "in light of the threat to the public that [he] was trying to eliminate."  *Harris*, 550 U.S. at 383.  In this case, even if that legal standard did apply, defendant Sutton still would not clear this bar given the facts of this incident, especially on a motion where the facts in the indictment must be presumed true.

For similar reasons, defendant Sutton's claim that the conduct "alleged in the Indictment falls wells short of more aggressive police efforts to pursue a suspect which are deemed constitutionally reasonable," does not provide a basis for dismissal.  ECF 188 at 15.  This argument rests on the faulty assumption that the only proscription on the defendants' conduct is the baseline, minimum prohibitions of the Fourth Amendment.  While it is certainly the case that courts have found certain aggressive police conduct (for instance, ramming a fleeing suspect's car or shooting at the driver) to be reasonable under the Fourth Amendment, that conclusion was reached after balancing that conduct against the need for public safety, as required by constitutional precedents.  *See Plumhoff*, 572 U.S. at 776 (shooting); *Harris*, 550 U.S. at 386 (ramming). That those officers were found to have acted constitutionally reasonably in those wholly different circumstances than those presented here is of no moment, when no constitutional violation is alleged.[3]

Finally, the defendant claims that Count One fails to state a criminal offense because "there is no legal theory under which the lawful conduct of a police officer creates liability of any kind on account of the flight of the suspect."  ECF 188 at 15.  While the government does not dispute the truth of this assertion, it is not an accurate characterization of the allegations contained in the Indictment.  While Count One does not allege a constitutional violation (nor is any such allegation required), it does allege unlawful conduct in violation of District of Columbia law, through allegations concerning the way defendant Sutton used his car to pursue Hylton-Brown resulting in

---

[3] Defendant Sutton's additional claim that "[t]his prosecution harks back to a theory that certain seizures by the police should be subject to a subjective assessment as to whether they are pretextual," ECF 188 at 16, is incorrect for similar reasons: the constitutional precedent that permits pretextual traffic stops, *Whren v. United States*, 517 U.S. 806 (1996), is not implicated by the charge in Count One.  As with the other cases upon which the defendant relies, *Whren* also addressed the contours of a suspect's rights under the Fourth Amendment, and the objective reasonableness standard that applies to law enforcement intrusions on those rights.  In the absence of an alleged constitutional violation here, that case is simply inapposite.

Hylton-Brown's death, with malice aforethought. These allegations, taken as true, establish each element of the criminal offense charged.

### iii.   Count One Has No Fair Warning Defect

Lastly, Count One has no fair warning defect, and defendant Sutton's claim that he could not have known that his driving might amount to second degree murder, ECF 188 at 18-24, should be rejected. As the Government explained when responding to this same argument in its Opposition to the Defendant's Fifth Motion to Compel (ECF 165), a defendant in a criminal case has fair warning so long as the law is clear enough "to provide a person of ordinary intelligence fair notice of what is prohibited." *United States v. Williams*, 553 U.S. 285, 304 (2008); ECF 165 at 4. By its plain language, the second-degree murder statute charged in Count One applies to "*whoever* with malice aforethought . . . kills another." D.C. Code § 22-2103 (emphasis added). Because there are no classes of people excluded from this statute—it applies to "whoever" commits the elements of the offense—under fundamental principles of statutory construction there are no exceptions for police officers, or any other class of person. *See Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1747 (2020) ("Nor is there any such thing as a 'cannon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."). Given applicable case law and longstanding D.C. law, municipal regulations, and relevant case law concerning the standard of care that MPD officers must satisfy when driving MPD vehicles, there is no serious question that § 22-2103 clears the low threshold for fair notice.

Just as with the defendant's assertion that he may only be prosecuted for constitutional violations, and therefore is immune from prosecution for violations of D.C. law, the defendant's reliance on federal constitutional case law for purposes of claiming a lack of fair notice for Count One is misplaced.  The government does not dispute that the precedents he cites, based upon "*Graham v. Connor* and its progeny" apply to all officers, including the defendant, for purposes of assessing whether their on-duty conduct violates the Constitution.  ECF 188 at 19. However, as discussed above—and as the defendant seems to concede based upon his references to current and pending D.C. law governing officers' use of force—the U.S. Constitution sets the floor, not the ceiling, for proscriptions on officers' conduct.  ECF 188 at 20-23. The District may impose other requirements on its police force, and it has done so.  Indeed, the defendant points out in his motion that the District has imposed *several* such sets of rules that govern a different type of officers' on-duty conduct—that is, the use of force.  The defendant specifically points to D.C. Code § 5-351.01, which sets limits for officers' use of deadly force, D.C. Code § 5-123.02, which sets criminal penalties for certain uses of force employed to effectuate an arrest, and D.C. Code § 24-261.02, which governs the use of force by private corrections officers.  ECF 188 at 20-22.  On top of this, the defendant notes that the D.C. Council is currently considering another bill that concerns officers' use of force.  ECF 188 at 22-23 (discussing the pending legislation).  This all proves the government's point: constitutional case law does not limit the District from further implementing its own rules to govern its police officers' conduct.

Count One of the Indictment is grounded in this exact premise:  where the District has imposed legal requirements for its police officers, they may be held responsible for violating them. Tellingly, the defendant makes no argument that he is *not* subject to the D.C. Code provisions he has cited concerning use of force.  The same principles that render those laws applicable to him

also mean that he is subject to the other regulations the District has imposed on officers, including those concerning their on-duty driving. The absence of an alleged constitutional violation from Count One, where none is required to properly plead the crime alleged, neither reveals a defect in the charge nor establishes a lack of fair notice.

### c. Counts Two and Three of the Indictment Properly Allege the Crimes of Conspiracy and Obstruction of Justice

The defendants are charged in Counts Two and Three with Conspiracy and Obstruction of Justice. Both seek to dismiss these counts for failure to state an offense under Rule 12(b)(3)(B)(v). Similar defects to the Indictment are raised by both for failing to allege the charges with sufficient (1) specificity as a whole; (2) facts for finding a reasonable likelihood of a communication about the fatal crash to a federal official; (3) how their conduct was misleading; (4) duties and standards of care he violated; and, (5) intent to obstruct; (5). These claims make arguments that extend far beyond the four corners of the Indictment and rest on the defendants' view of the evidence, and are therefore premature or are otherwise meritless. The motions to dismiss Counts Two and Three of the Indictment for failure to state a claim should be denied.

To prove conspiracy, in violation of 18 U.S.C. § 371, the Government must prove (1) that an agreement existed between two or more people to commit a crime; (2) that the defendant intentionally joined the agreement; and (3) that at least one of conspirators committed an overt act. "An indictment alleging a § 371 conspiracy is sufficient if it describes the essential nature of the conspiratorial agreement and sets forth the essential elements of the offense" as well as alleging "at least one overt act in furtherance of the conspiracy." *United States v. Tajideen*, 318 F.Supp.3d 445, 462 (D.D.C. 2018) (quotation marks omitted). If these allegations are made in a fashion that "apprise[s] [the] defendant[] of what [he] must be prepared to defend" then "[n]o further allegations are required." *Id*. Establishing an agreement for these purposes requires proof that the

conspirators "agreed at least on 'the essential nature of the plan,' not necessarily on 'the details of their criminal scheme.'"  *United States v. Hemphill*, 514 F.3d 1350, 1362 (D.C. Cir. 2008); Criminal Jury Instructions for the District of Columbia 7.102 ("[i]t is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime").

To prove obstruction of justice in violation of 18 U.S.C. § 1512(b)(3), the government must prove that the defendants (1) engaged in misleading conduct toward another person; (2) with the intent to hinder, delay, or prevent the communication of information to a law enforcement officer of the United States; (3) that such information related to the commission or possible commission of a federal offense, and (4) that the defendants acted knowingly.  18 U.S.C. § 1512(b)(3); *United States v. Fowler*, 563 U.S. 668 (2011); Fed. Crim. Jury Instr. 7th Cir. 1512(c)(2), (2020).  For purposes of the third element, a defendant need not have had a particular federal law enforcement officer in mind, nor even a "general thought about federal officers" in mind, nor must the government even prove that a communication "would have been federal." *Fowler*, 563 U.S. at 673, 678.  Instead, the threshold requirement is proof of "a reasonable likelihood . . . that . . . at least one of the relevant communications would have been made to a federal law enforcement officer." *Id*. at 677-78.

Despite the defendants' claimed defects in Counts Two and Three, both Counts contain allegations that, when taken as true, sufficiently allege both offenses. Dismissal is unwarranted, and the defendants' claims should be rejected.

     i.  <u>The Allegations in Counts Two and Three are Sufficiently Specific</u>

Counts Two and Three of the Indictment contain sufficiently specific allegations to easily "clear[] th[e] low bar," *see United States v. Sargent*, No. 21-cr-258, 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022) (Hogan, J.), to sufficiently plead a violation of Sections 371, and 1512.

As an initial matter, there is no requirement that an indictment plead the type of specific facts that defendants assert is necessary. *See Hamling v. United States*, 418 U.S. 87 (1974) (internal citation and quotation marks omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id*. at 117 (citing *United States v. Carll*, 105 U.S. 611, 612 (1882)).

Instead, the defendants' arguments are more appropriately made to the jury at trial to negate guilt based on the evidence presented, or in a Rule 29 Motion for Judgment of Acquittal. Fed. R. Crim. P. 29. A Rule 29 motion requires a "substantive determination that the prosecution has failed to carry its burden." *Smith v. United States*, 543 U.S. 462, 468 (2005). A conviction merits being set aside if the balance of evidence for a theory of guilt and theory of innocence are "equal or nearly equal," which necessarily entails reasonable doubt. *United States v. Santillana*, 604 F.3d 192, 195 (5th Cir. 2010); *United States v. Borda*, 768 F. Supp. 2d 289, 293 (D.D.C. 2011) (in reviewing a Rule 29 motion, the "task is to determine whether, viewing the evidence in the light most favorable to the prosecution and according the verdict the benefit of all legitimate inferences, a reasonable trier of fact could have found the essential elements beyond a reasonable doubt").

The Indictment's allegations, taken as true, sufficiently inform the defendants of how their misleading conduct could prove the charges. Count Two alleges that the defendants committed the offense of conspiracy in that they joined and took acts "[b]etween October 23, 2020, and October

24, 2020, in the District of Columbia, to engage in misleading conduct toward another person with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States information relating to the commission and possible commission of a Federal offense." Indictment, ¶ 31.  Count Two details four "manner and means" by which the defendants carried out the conspiracy (*id.* ¶ 33) as well as more than twenty overt acts that they took in furtherance of it, both at the crash scene and at the police station (*id.* ¶¶ 34-48).   The conspiracy is alleged to have occurred in a short window of time on October 23 and 24, 2020, following the fatal collision just after 10:00 p.m. on the night of October 23, and there are no unindicted co-conspirators.

Count Three charges the substantive obstruction offense that was the object of the conspiracy, in which the defendants in "aiding and abetting each other . . . hid from MPD officials the circumstances of the traffic collision leading to Karon Hylton-Brown's death, to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation."  *id*. at ¶ 50.  The obstruction is alleged to have occurred in the same time window as the conspiracy charged in Count Two (*id.* ¶ 50) and incorporates by reference numerous explanatory factual allegations from earlier portions of the Indictment (*id*. ¶ 49), to include six overt acts that detail how the defendants misled their senior commanding officer about the collision circumstances (*id*. ¶ 46), an allegation that defendant Sutton drafted a report that minimized Hylton-Brown's observable injuries (*id.* ¶ 47), and that defendant Zabavsky "continued to withhold from the Watch Commander all information about Hylton-Brown's serious injuries and updates about his condition, despite knowing that it was critical and worsening."  *Id*. ¶ 48

In so pleading, both Counts Two and Three adequately inform the defendants about the nature of the accusations against them. *Ballestas*, 795 F.3d at 148-49.  Taken together, both counts allege that the defendants "conspire[d]" and "agree[d] with each other," "aided and abetted each

other," shared a criminal intent to "hinder, delay, and prevent the communication to a law enforcement officer of the United States information relating to the commission and possible commission of a Federal offense," and committed no less than twenty overt acts.  The language of both charges, which must be presumed to be true for purposes of this motion, more than satisfy the baseline requirement that the indictment present "'a plain, concise, and definite written statement of the essential facts constituting the offense charged,'" *id.* at 149 (quoting Fed. R. Crim. P. 7(c)); *United States v. Hillie*, 227 F.Supp.3d 57, 71 (D.D.C. 2017) (quoting *United States v. Bowdoin*, 770 F.Supp.2d 142, 145 (D.D.C. 2011)) (an indictment is legally sufficient where the allegations contained in it "if proven, [they] are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged.").  As such, both Counts Two and Three are sufficient to make out the elements of 18 U.S.C. § 371, and 18 U.S.C. § 1512(c)(3), 2, and therefore state an offense.

      ii.   The Indictment Need Not Allege Additional Facts About When the Defendants' Formed Their Intent, Official Duties and Standards of Care that They Violated, or How the Draft Report Misled Others

The defendants make several claims about the factual sufficiency of the allegations pled in Counts Two and Three, arguing that additional facts are required.  For example, regarding intent, defendant Sutton argues that the Indictment does not properly allege he formed the necessary mental state to obstruct because, at the time of the collision, "he did not know that his driving would constitute a crime." ECF 188 at 31.  Both defendants maintain that certain overt acts in Count Two are not supported with parallel allegations of duties or standards of care violated.  ECF 188 at 35-36; ECF 187 at 21, 26.  The defendants also assert that the allegations of obstruction based on misleading accounts are insufficiently detailed; defendant Sutton claims that the draft report that is alleged to contain misleading representations is not sufficiently pled because it was

a draft and never finalized for submission (ECF 188 at 37-38), while defendant Zabavksy generally claims that the Indictment fails to provide "any detailed description" of "how" and "what portions" of his conduct were misleading. ECF 187 at 16, 19, 30. These claims all rest on disputed assumptions of fact that are outside the four corners of the Indictment and, therefore, are inconsistent with the applicable legal standard for a motion to dismiss. The defendants' motions should be denied.

Regardless, the Indictment does allege facts that, taken as true, negate the defendants' claimed defects. Specifically, in arguing that he did not form a timely intent to obstruct, defendant Sutton claims there is no allegation that he formed such intent at the crash scene. ECF 188 at 30. This is inaccurate, as the Indictment alleges as an overt act that "[n]ine minutes after the collision, SUTTON and ZABAVSKY agreed that SUTTON would write the police report for the incident." Indictment at ¶ 36. In addition, the Indictment lays out additional overt acts taken on scene that reflect an intent by the defendant to obstruct at the scene, including taking control of the report writing duty from another neutral officer who had gathered information and was preparing to write the report; failing to obtain eye-witness statements; permitting the striking vehicle driver to leave with his vehicle; speaking off BWC with defendant Zabavsky before leaving the scene; removing his vehicle from the scene, and; driving over evidence when leaving the scene. *id.* at ¶¶ 37, 40-43, 45. Taken as a whole, these allegations—which must be taken as true for consideration of this motion—establish the defendants' requisite intent.

Additionally, even though not required, Counts Two and Three also allege specific standards of care that the defendants violated. They are alleged to have taken control of the crime scene and "deliberately neglected to execute their duties properly." *id.* at ¶ 15. The Indictment further alleges that the defendants failed to take certain actions, i.e., immediately notifying MCU

and senior officials about the crash, and that they "neglected to execute their duties properly," including those that cover report writing, eye-witness statement collection, and crime scene preservation.  *id.* at ¶¶ 14, 15.  As well, the Indictment specifies the underlying standards of care that defendant Sutton knowingly violated and thus supportive of his motive to commit Counts Two and Three.  *id.* at ¶ 8.  Also included is reference to DCMR § 18-2002.4, which expressly creates a duty of a care to "all persons" and prevents construing the standard to "protect the driver from the consequences of his reckless disregard for the safety of others."  *id.* at ¶ 9.  Moreover, the defendants are charged with aiding and abetting each other in furtherance of the conspiracy. To this end, the Indictment alleges that "ZABAVSKY was responsible for ensuring that officers under his supervision complied with MPD policies and procedures," and that his duties included reporting sensitive incidents to the MPD management chain above him."  *id.* at ¶ 7.

Together, these standards that are detailed in the Indictment negate defendant Sutton's assertion that the charges do not allege that he had "any reason even to believe he was at risk for administrative discipline until after the Watch Commander reversed himself and declared the incident a pursuit."[4]  ECF 188 at 38.  Likewise, defendant Zabavksy's assertion that they lacked "any knowledge of the legal requirements placed on them" is without merit. ECF 187 at 26. Combined with their collective years of experience (28 years total), and language of the D.C. Code offenses—to include second degree-murder that defendants swore an oath to enforce—the allegations provide ample basis for understanding why they intended to mislead through their omissions and minimizations. *id.* at ¶ 6, 7.

---

[4] The government disputes the defendant's factual contention that the Watch Commander "reversed himself" when declaring the incident a pursuit; ███████████████████████

These referenced portions of the Indictment also rebut each of the defendants' more specific allegations that the allegations are insufficient to show the misleading nature of their conduct.  As an initial matter, that factual claim is premature because Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-247 (D.C. Cir. 2005), neither of which has occurred here.  Even so, defendant Sutton's drafting of a "traffic crash report that minimized the extent of the observable injuries," regardless of whether in draft form, combined with the other alleged overt acts taken to advance the conspiracy, would support convictions on Counts Two and Three.  And, contrary to defendant Zabavksy's claim (ECF 187 at 20), the allegations do contain specific facts about his misleading communication, including about who at MPD he misled (the Watch Commander), when he misled him (after returning to the Fourth District), and "which of the portions" of his communications were misleading (failure to acknowledge his involvement in the pursuit; whether Sutton's driving constituted a vehicular pursuit; Hylton-Brown's supposed intoxication; that Hylton-Brown was even hospitalized).  Simply put, an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (per curiam).  Claims based on a lack of specificity therefore provide no basis for dismissal here.

### iii.  The Indictment Properly Alleges a Federal Nexus

The Indictment contains allegations that, presumed to be true at this stage, establish the required federal nexus.  The allegations assert that the information the defendants conspired to withhold, including from the Watch Commander and defendant Sutton's report, was of the type that would have been communicated to MCU and IAD officials and had a reasonably likelihood

of being communicated thereafter to federal law enforcement officials.   They maintain otherwise, claiming that they lacked knowledge of this possibility because, as defendant Sutton summarizes, "nothing is said about the prospects of such administrative review in the Indictment" that could have led to such a chain of communication.  ECF 188 at 32.  A review of the pertinent allegations shows this claim to be baseless.

The Indictment alleges that the crash that "ejected Hylton-Brown off the moped and across the full width of the alleyway," mortally wounding him, occurred "in plain view of SUTTON." Indictment at ¶ 13.  The Indictment further alleges that at the crash scene both defendants arrived to find Hylton-Brown on the street "motionless, unconscious, and with a pool of blood collecting under his head."  Indictment at ¶¶  13, 14.  Taking these alleged facts to be true, both defendants were aware of Hylton-Brown's grave medical condition.   The Indictment then alleges that defendants took steps at the scene that derailed MPD's usual internal investigative procedures, and instead allowed them to maintain control over the law enforcement response to this incident. Indictment, at ¶ 33.  Defendant Zabavsky, despite being the highest-ranking official on scene, did not notify MCU, the unit responsible for investigating traffic crashes that result in serious bodily injury or death, Internal Affairs, or anyone else in his chain of command, of the serious crash.  *Id*. at ¶¶ 14, 35, 48.  Nine minutes after the crash, the defendants agreed that Sutton would write the police report for the incident, and both defendants told a junior MPD officer to hand over that responsibility to him.  *Id*. at ¶ ¶ 36-38.  Neither defendant took witness statements, despite each of them being approached by at least one person who claimed to be an eyewitness.  *Id*. at ¶¶ 39-40. A mere twenty minutes after the crash, defendant Sutton allowed the driver of the vehicle that struck Hylton-Brown to leave.  *Id.* at ¶ 41.  Shortly after this, both defendants turned off their BWCs, conferred privately together, *id*. at ¶ 42, and then left the scene.  Defendant Zabavsky left

no police official in charge, and defendant Sutton drove his MPD vehicle directly over physical evidence from the crash.  *Id*. at ¶¶ 43, 45.  The effect of these actions are explained in the Indictment as having "delayed, and could have prevented, notifications to MCU and the Internal Affairs Division (IAD), which is responsible for making referrals to federal authorities for investigations of potential criminal civil rights violations."  *Id.*

The Indictment alleges that the defendants continued their obstructive conduct at the Fourth District police station upon returning from the scene.  Specifically, defendants are alleged to have provided "a misleading account of the incident to the Watch Commander," in that (1) defendant Sutton denied to the Watch Commander that had had engaged in a vehicular pursuit of Hylton-Brown; (2) defendant Zabavsky withheld any mention from the Watch Commander of his involvement in the pursuit; and (3) neither defendant told the Watch Commander that Hylton-Brown had been injured, let alone grievously so.  *Id*. at 16.  As explained, aspects of this misleading account were then incorporated into defendant Sutton's draft report, which would have been used for further law enforcement investigation and determinations as needed.  *Id*. at 47.  Only after receiving dire details about Hylton-Brown's medical condition did the defendants reveal this information to the Watch Commander, thus triggering otherwise delayed calls to MCU and IAD. *Id*. at 17.

Taken as a whole and as true, the Indictment's allegations plead an intentional and coordinated effort between the defendants to suppress information about the crash investigation from being uncovered at the scene, properly documented in the police report, and timely communicated to supervising officials and investigative units.  The Indictment alleges that both defendants were aware of the severity of the conduct, the general duties and obligations associated with police work, including reporting information up the chain-of-command, and that IAD

investigators have the responsibility of referring relevant information to federal authorities for criminal investigation.  The Indictment therefore contains sufficient allegations to support the conclusion that the defendants sought to suppress information relevant to a federal investigation that was reasonably likely to be communicated to a federal investigator.

Defendant Sutton counters that there were no underlying federal criminal offenses committed that would have triggered concern about a federal investigation. ECF 188 at 34. However, argument relies on factual assumptions that lie far beyond the four corners of the Indictment.  And in any event, the obstruction statute charged requires only that information "relating to the . . . possible commission of a Federal offense" be hindered from communication to a federal authority.  18 U.S.C. §  1512(b)(3).  Specific allegations about IAD's role of referring appropriate cases for federal investigation, and defendants' attempts to forestall if not prevent information from being received by IAD and MCU, reflect a reasonable likelihood of a federal level communication about the crash, and more than satisfy this pleading requirement.

Defendant Zabavksy's reading of *Fowler* for the proposition that the "Indictment must provide that the defendant knew of a particular law enforcement officer" (at 22), is inapposite to the Court's ruling, which did not even require proof that the obstructing officer had a "general thought about federal officers."   *Fowler*, 563 U.S. at 673, 678.  Likewise, he incorrectly claims that the Indictment fails because it "does not state that there was a possibility of a federal crime." ECF 187 at 23.  Instead, all that is required is that the allegation establish some "reasonable likelihood" of a "relevant communications would have been made to a federal law enforcement officer." *Fowler*, 563 U.S. at 677; *see also* Indictment at ¶ 14 ("These actions delayed, and could have prevented, notifications to MCU and Internal Affairs Division (IAD), which is responsible for making referrals to federal authorities for investigations of potential civil rights violations");

*United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain'").

Defendant Sutton's citation to *United States v. Snyder*, 865 F.3d 490 (6th Cir. 2017), for the proposition that a mere relationship between local and federal officials is insufficient to establish a federal nexus is unavailing.  ECF 188 at 32-33.  There, the fact that the underlying robbery offense could have been prosecuted in federal court and that the local and federal officials coordinate law enforcement activities was deemed an insufficient federal nexus.  *Id.* at 498.  Here, by contrast, as alleged in the Indictment, an incident such as this fatal collision was subject to investigation by IAD as a matter of standard department procedure, which the defendants attempted to subvert.  *See* Indictment ¶ 3.  No such investigative mechanism existed in *Snyder*, which, unlike in this case, dealt with a civilian not subject to automatic review by investigating authorities for the possibility of a federal investigation.

Accordingly, the allegations in the Indictment sufficiently allege a federal nexus to the fatal crash.  The defendants' effort to seek dismissal on this basis should be rejected.

## II.    THE GRAND JURY INVESTIGATION WAS CONDUCTED PROPERLY

Defendant Sutton asserts that the Indictment should be dismissed due to "grand jury abuse."  ECF 185 at 7.  Specifically, he claims that the government presented improper testimony to the grand jury, used evidence that violated his due process rights, misled the grand jury ██ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Both defendants further assert that the government improperly withheld allegedly exculpatory evidence from the grand jury's consideration.  These arguments are counterfactual, cherry-pick witness testimony that do not actually support his claims, and manufacture alleged wrongdoing out of thin

air.   And even if these assertions were accurate they would not support dismissal under any applicable legal framework.   The motion should be denied.

> ### a. For an Indictment to Be Dismissed Based on Government Misconduct, a Defendant Must Show Misconduct and Substantial Prejudice.

The defendants' motions suggest the government's investigation constitutes outrageous conduct that improperly infringed the grand jury's independence, but they fail to support the claims.

"When examining a claim that the grand-jury proceeding was infected by prosecutorial misconduct, the Court first affords that proceeding 'a presumption of regularity.'" *United States v. Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986)).   A facially valid indictment "may not be challenged on the ground that the grand jury acted on the basis of inadequate, unreliable, or incompetent evidence." *United States v. Borda*, 905 F. Supp. 2d 201, 206 (D.D.C. 2012) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261(1988) ("an indictment valid on its face is not subject to such a challenge")); *United States v. Calandra*, 414 U.S. 338, 344-45 (1974) (same); *Costello v. United States*, 350 U.S. 359, 363 (1956) (holding that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient).   Moreover, the grand jury's mandate, as an investigative body, requires it to seek "all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991).   To that end, "[a]s a necessary consequence of its investigatory functions, the grand jury paints with a broad brush," meaning that inquiry into "all information that might possibly bear in its investigation" is appropriate. *Id*.   This includes evidence that would not otherwise be admissible at trial. *Coppedge v. United States*, 311 F.2d 128, 132 (D.C. Cir.

1962) ("The nature of its function, unlike an adversary proceeding, contemplates that it will hear from many sources uninhibited by the strict rules of evidence applicable in a trial. . . .").

The Supreme Court has explained that federal courts' limited supervisory role in this context derives from "the grand jury's operational separateness from its constituting court," which "suggest[s] that any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings." *United States v. Williams*, 504 U.S. 36, 49-50 (1992); *id*. at 50 (holding that this supervisory power "certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself"). "It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. . . and to make the assessment it has always been thought sufficient to hear only the prosecutor's side." *Id*. at 51-52. Because of this, there is no legal obligation for the government to present even exculpatory evidence to the grand jury, and a facially valid indictment may not be challenged on the ground that such evidence was not presented. *Id*. at 52, 53 ("Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this [the grand jury] system."); *id*. at 53 ("The authority of the prosecutor to seek an indictment has long been understood coterminous with the authority of the grand jury to entertain [the prosecutor's] charges. . . . If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."). In turn, an alleged failure to present exculpatory evidence to the grand jury is not a proper basis upon which to seek an indictment's dismissal. *Id*. at 54-55 ("A complaint about the quality or adequacy of the evidence can always be recast as a complaint that

the prosecutor's presentation was 'incomplete' or 'misleading.'   Our words in *Costello* bear repeating:  Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" (quoting *Costello* 350 U.S. at 364 (1956))); *Borda*, 905 F.Supp.2d at 204 ("This standard is so high that the dismissal of an otherwise valid indictment is inappropriate even where the government failed to disclose substantial exculpatory evidence it possessed at the time of the grand jury.").

For a court to even consider dismissal as a possible sanction for government conduct before the grand jury, "the defendant [must] show[ ] that the prosecutor instituted some error or irregularity—more than a mere assertion that the prosecutor presented 'inadequate, unreliable or incompetent evidence," including allegedly exculpatory evidence. *Akinyoyenu*, 199 F. Supp. 3d at 36 (quoting *Borda*, 905 F. Supp. 2d at 204 (D.D.C. 2012)).  Even then, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v*, 487 U.S. at 254; *accord Akinyoyenu*, 199 F. Supp. at 36.

Where—as in the instant motion—non-constitutional errors are alleged, prejudice is assessed under the harmless error standard set by Fed. R. Crim. P. 52(a), which requires that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Bank of Nova Scotia*, 487 U.S. at 254-55.  Keeping with the limited nature of a court's review of grand jury proceedings, the Supreme Court has explained that review under this deferential standard is mandatory, and "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)" to assess such allegations. *Id*. at 254 (reversing district court's dismissal of the indictment on this basis).  Rather, to establish prejudice, "the defendant must also prove 'that the violation substantially influenced

the grand jury's decision to indict, or [that] there is grave doubt that the decision to indict was free from the substantial influence of such violations.'" *Akinyoyenu*, 199 F. Supp. at 36-37 (quoting *Bank of Nova Scotia*, 487 U.S. at 256) (additional internal quotation marks and citations omitted). "'Dismissal in these circumstances is warranted only when prosecutorial misconduct significantly infringes on the grand jury's ability to render an independent judgment.'" *Id*. at 37 (quoting *United States v. Espy*, 23 F.Supp.2d 1, 9 (D.D.C. 1998)).

Here, the defendants have failed to demonstrate misconduct or any prejudice that would warrant dismissal under the applicable legal standards.  Their claims must therefore be rejected.

b.   The Government's Examinations of Grand Jury Witnesses Were Proper

Relying on cherry-picked passages of testimony taken wholly out of context, defendant Sutton asserts █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

iv.   ██████████████████████████████████████████

██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] Given the applicable case law that precludes the types of challenges the defendant advances concerning these witnesses, there is ample basis to reject these claims on that ground alone.  *See Bank of Nova Scotia*, 487 U.S. at 254-55.  Regardless, to ensure that the grand jury witness testimony is not taken out of context, and to guarantee the accuracy of the record before the Court, the government provides the detailed recitation of facts and legal analysis that follows below.

---

[6] The government has attached as exhibits complete copies of all of the grand jury transcripts
cited in this memorandum.
[7]



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███ █ ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ ■  Rather, at that point in time, the information available to investigators about this incident largely came from (1) the narrative in defendant Sutton's draft police report, which described the incident as "an attempted traffic stop . . . after observing the listed driver . . . riding on the sidewalk in the 500 block of Kennedy St. NW without a helmet," (2) defendant Zabavsky's statement at the scene to ████ and others (captured on BWC) that the officers had been trying to conduct a traffic stop on Hylton-Brown for a helmet violation, and (3) ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[9] When an officer activates his BWC, it starts recording both audio and video until the user turns off the camera.  At the time that the camera is activated, it also automatically captures the two minutes of video prior to the activation, although that two minute "buffer" period does not include sound.

[10] Indeed, despite exhaustive efforts to identify, locate, and subpoena the civilian eyewitnesses shown on the BWC from the scene, the government was not able to ████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███

      ██████████████████████████████████████████

███████████████████████████████████████████████

Here, from the outset, upon comparing the limited BWC video of the chase to the defendants' explanation of this incident as an attempted stop for a minor traffic violation, investigators recognized that additional examination of the reason for the chase—whatever that may be—was necessary.  Given these open investigative questions, it was wholly appropriate ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████No matter how the defendant seeks to characterize these lines of questioning when taken out of context, █████questioning did not elicit evidence beyond the grand jury's proper scope, let alone any misconduct that prejudiced defendant Sutton's substantive rights.

       2.    ████████

      ██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

For the same reasons that apply to the similar lines of questioning asked of ████ these

questions were well-within the boundaries of the grand jury's investigation into this incident. *See*

*R. Enterprises, Inc.*, 498 U.S. at 297. ████████████████████████████████

██████████████████████████████████████████████████████

████████████. As discussed above, the disparities between the available BWC of the chase and the

defendants' claims (in their reports, on BWC, and to their Captain) that they had merely tried to

stop Hylton-Brown for a helmet violation gave rise to numerous unanswered questions that

warranted exploration: the facts surrounding the initiation of the chase, the usual police practices

in the neighborhood, and any information about prior on-duty conduct by defendant Sutton,

including any history he had with Hylton-Brown. ████████████████████ ████████████

██████████████████████████████████ ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Considered in context, and especially in light of the broad mandate of the grand jury, none of this

constitutes misconduct nor did it generate undue prejudice to the defendant.

v.   ██████████████████████████████████████

████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████





████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

Defendant Sutton asserts ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████. Taken in context,

these claims are meritless. █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

vi.





\* \* \*

When taken in proper context and considered against the factual record of this case, none of the defendant's accusations concerning any of these witnesses establishes misconduct by the government, let alone the substantial prejudice required to warrant the extreme measure of dismissal.  The defendant's motion should be denied.

c. <u>The Government Did Not Mislead the Grand Jury or Withhold Exculpatory Evidence</u>

Defendant Sutton alleges that the government misled the grand jury and withheld exculpatory evidence in several ways, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ The defendants offer no argument or evidence that they were prejudiced by the supposed errors—i.e., that they would not have been indicted but for them—and their claims for dismissal should be rejected on that basis alone. *See Akinyoyenu*, 199 F. Supp. at 36-37.  Moreover, their claims are based on a factually incorrect recitation of what occurred before the grand jury, and they have failed to show any error at all.

First, ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████





Second, the government did not "suppress" evidence of a *Terry* stop. ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████   Such a challenge is not a cognizable basis to dismiss a

facially valid indictment.  *Borda*, 905 F.Supp.2d at 206 ("[A]n indictment valid on its face may

not be challenged on the ground that the grand jury acted on the basis of inadequate, unreliable, or

incompetent evidence." (citing *Bank of Nova Scotia*, 487 U.S. at 261)).   Regardless, taken in

context, the defendant's claims about any error ████████████████ are meritless.









This, too, is not a proper basis for challenging the Indictment. *Akinyoyenu*, 199 F. Supp. 3d, at 36) (no basis for dismissal upon "a mere assertion that the prosecutor presented 'inadequate, unreliable or incompetent evidence'").


███████████████████████████████████████████████████

████████████████████████████

Fourth, defendant Sutton claims that ██████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ constituted governmental misconduct

that warrants dismissal.  As with the defendant's other allegations, this is not a legally cognizable

ground for dismissal of a facially valid indictment.  *Borda*, 905 F.Supp.2d at 206 ("[A]n indictment

valid on its face may not be challenged on the ground that the grand jury acted on the basis of

inadequate, unreliable, or incompetent evidence." (citing *Bank of Nova Scotia*, 487 U.S. at 261)).

Even so, when considered in context, the defendant mischaracterizes the nature of the

government's evidence on this topic.

Given the nature of this incident, ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



Considered in its full context, the government's presentation of evidence ███████

███████ was neither misleading nor improper. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

        In addition to seeking dismissal of the Indictment due ████████████████████████████

████████████████, defendant Sutton also seeks the grand jury minutes "to determine how the

Grand Jury was instructed" about ████████ "and whether the Grand Jury based its vote on legally

permissible standards."  ECF 185 at 29.  To obtain the release of grand jury minutes, a defendant

must make "a 'particularized and factually based' showing that grounds exist to support the

proposition that irregularities may have occurred in the grand jury proceedings and may justify the

dismissal of one or more counts of the indictment."  *United States v. Naegele*, 474 F.Supp.2d 9,

10 (D.D.C. 2007) (Friedman, J.); *id*. ("It is also settled that conclusory or speculative allegations

of misconduct do not meet the particularized need standard.").   Here, the defendant has not

established prejudicial error in the presentation of evidence that could warrant dismissal of any charge or the Indictment as a whole.  This request, too, should therefore be denied.

Finally, the purportedly exculpatory "omissions" that both defendants identify provide no basis for the relief they see.  An otherwise facially valid indictment cannot be challenged on the ground that allegedly exculpatory evidence was not presented to the grand jury.  *Williams*, 504 U.S. at 54-55; *Borda*, 905 F.Supp.2d at 204.  Moreover, several of the defendants' claims are counterfactual or reference wholly irrelevant topics that are not exculpatory.

First, ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

     █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████



██████████████████████████████████████████████████ There simply is no basis for granting the extraordinary relief the defendant seeks on these legally insufficient grounds.  The defendant's motion should be denied.[18]

### d. The Defendants Failed to Establish a Basis for the Release of Grand Jury Minutes or the Need for an Evidentiary Hearing

For all the reasons given above, the defendants failed to establish misconduct before the grand jury, let alone any error that forms a legally cognizable ground for dismissal of the Indictment.  This, in turn, falls far short of the "particularized need" required for the disclosure of grand jury minutes.  *Naegele*, 474 F.Supp.2d at 10 (holding that disclosure of grand jury minutes requires the defendant to make "a 'particularized and factually based' showing that grounds exist to support the proposition that irregularities may have occurred in the grand jury proceedings and may justify the dismissal of one or more counts of the indictment").  As there is no basis for disclosure of these minutes, there is also no basis for an evidentiary hearing about their content.

## III.    DEFENDANT ZABAVSKY IS NOT BEING SELECTIVELY PROSECUTED

Defendant Zabavsky moves to dismiss the Indictment under Rule 12(b)(3)(A)(iv) on the ground that he is being selectively and vindictively prosecuted "based upon his race and occupation" as police officer "due to improper motivation [by the government] to prevent further

---

[18] Defendant Zabavsky also seems to take issue with the fact that the grand jury indicted him despite hearing evidence he believes to be exculpatory— ███████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████            There is certainly no precedent, nor does the defendant cite one, for dismissing an indictment because the grand jury appears to have weighed the evidence differently than the defendant would have done.

discord in the district." ECF 187 at 10. This claim falls far short of meeting the legal standard required for dismissal under this provision.

To warrant dismissal for selective prosecution, a defendant must establish that the prosecution was initiated for unconstitutional reasons. The Supreme Court has explained that "a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for such a claim "is a demanding one" that "should itself be a significant barrier to the litigation of insubstantial claims." *Id*. at 463-64. This is because "the presumption of regularity supports [federal prosecutors'] prosecutorial decisions[,] and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*. at 464 (citations and quotation marks omitted).

While "the decision to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification" protected by the Constitution, to advance a selective prosecution claim the defendant must overcome the presumption that the prosecutor has *not* violated the Constitution by presenting "clear evidence to the contrary." *Id*. at 465. Where the defendant asserts selective prosecution based on race, this means that the defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id*. Establishing a discriminatory effect requires proof "that similarly situated individuals of a different race were not prosecuted." *Id*.

Defendant Zabavsky provides no such evidence here. Indeed, in claiming that the case was initiated "due to improper motivation to prevent further discord in the district," (ECF 187 at 10) defendant Zabavsky does not even allege an unconstitutional, discriminatory purpose for the

prosecution.  Moreover, the occupation of police officer is not a constitutionally protected class of persons (nor, as he asserts, is policing a constitutionally protected activity) that would be subject to equal protection under the U.S. Constitution for purposes of a selective prosecution claim.  And to the extent defendant Zabavsky relies on discrimination based on his own race, he makes no showing whatsoever—let alone "clear evidence"—that establishes his race played any role in the government's investigation or prosecutorial decision-making.  The defendant's motion wholly fails to meet the heavy burden required to establish selective prosecution in this case, and therefore should be denied.

## **<u>CONCLUSION</u>**

For the reasons given above, the defendants' motions to dismiss the Indictment (ECF 185, 187, and 188) are meritless.  They provide no basis for dismissal under applicable law and should therefore be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Risa Berkower*
       AHMED BASET
       IL Bar No. 6304552
       RISA BERKOWER
       NY Bar No. 4536538
       Assistant United States Attorneys
       U.S. Attorney's Office for the District of Columbia
       555 4th Street, N.W.
       Washington, D.C. 20530
       Phone: (202) 252-7097 (Baset)
             (202) 252-6782 (Berkower)
       Email:  Ahmed.Baset@usdoj.gov
             risa.berkower@usdoj.gov