UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-cr-598-PLF |
| TERENCE SUTTON and : | |
| ANDREW ZABAVSKY, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT SUTTON'S**
**MOTIONS REGARDING GOVERNMENT'S CLOSING ARGUMENT**

Defendant Sutton has asked the Court for an evidentiary hearing, to compel discovery, and to dismiss the case against him because of claimed errors in the Government's closing argument (ECF Nos. 412, 440). As already discussed at length by the parties and the Court, the Defendant's motion arises from his misunderstanding of the Government's closing demonstrative presentation, which was not in evidence, and did not go back to the jury during deliberations.[1] And, even though there was no error, the Court, in direct response to the Defendant's previously expressed concerns, gave a curative instruction to the jury reminding them closing arguments are not evidence, demonstratives are not evidence, and that their recollection of the evidence controls. Trial Tr. 12/15/22 at 38-39. Defendant Sutton's motion should be swiftly denied.

**I.    There was No Error in the Government's Closing Argument**

During closing argument, the Government showed the jury a demonstrative PowerPoint presentation, attached as Exhibit 1.[2] The PowerPoint presentation contained several dozen slides,

---

[1] *See, e.g.,* Trial Tr. 12/15/22 at 2-11.

[2] This Court ordered the parties to meet and confer to discuss the closing demonstratives at 9:00am on December 14, 2022, during which time the Government made its presentation available to the Defendants so they could voice any objections in advance of closing arguments. *See* 12/13/22 Trial Tr. PM Session at 66. Neither Defendant objected in advance to the slides in the

1

some of which had embedded trial exhibits; others were purely demonstrative. Each slide has on it in the upper left-hand corner a Justice Department seal, and in the upper right-hand corner, in small print, a cross-reference to an exhibit from which it was derived.

Slide 19 contains the Government's summary of a list of vehicle pursuit requirements that the Government argued that Defendant Sutton ignored.  It includes the language "do not flush into a roadway," to which the Defendant appears to object.   In very small print on the upper right-hand corner of this slide states only "GEX 413-G."  Government Exhibit 413-G is a PowerPoint presentation used in Metropolitan Police Department (MPD) training on General Order 301.03.  In contrast, Slide 21 contains an image derived from Defendant Suttons' actual training materials. The upper right-hand corner states, "GEX 413-I." Government Exhibit 413-I is another PowerPoint presentation used in MPD training, this one on Pursuit Techniques. The slide does not contain the "do not flush into a roadway" language.

During closing argument, Mr. Baset summarized the vehicle pursuit requirements in the MPD general orders, and stated while showing Slide 19, that Defendant Sutton was:

> "aware to not flush the motorist into a roadway or into an object. And that, ladies and gentlemen, couldn't be more crystal clear and obvious on the body cam. He also knew as well that the vehicular pursuit policy expressly barred him from chasing anybody to enforce traffic violations. It's -- it could not be more clear in that general order."

Trial Tr. 12/14/22 AM Session at 30.  In later discussions, the Court agreed that that the MPD general orders in evidence, say "something to the effect of you should not force vehicles on or off roadways."  Trial. Tr. 12/15/22 at 21. In other words, Mr. Baset, did not mischaracterize the MPD general orders in his summary demonstrative.

---

Government's presentation. Trial. Tr. 12/14/22 at 4. At the time, the Government noted for the Defendants that some slides were contained purely demonstrative explanations, and others had embedded exhibits.

Later is his closing argument, with regard to Slide 21, Mr. Baset stated:

"You also know that Sutton was trained about the extreme risks when his driving -- when he drove in this manner. For example, in one of the trainings he received, which you are actually looking at the very slide that he was looking at when he took the training, he was told about the rules of engagement, about how you actually conduct a vehicular pursuit."

Trial Tr. 12/14/22 AM Session at 36 (six pages after the discussion of Slide 19). Thus, it is clear from the record that Mr. Baset correctly identified Slide 21 as containing actual material from Defendant Sutton's training and not Slide 19 as Defendant Sutton suggests.

It is possible to pinpoint which slide goes with which statement by Mr. Baset because of Slide 20, sandwiched between them. Slide 20 contains a copy of Defendant Sutton's 2019 reprimand for failing to follow MPD's vehicle pursuant policy. Based on this sequence of events, you would expect to find a discussion of the reprimand between pages 30 and 36 of the transcript from Mr. Baset's closing argument, and that is exactly what the transcript reflects. Trial Tr. 12/14/22 AM Session at 31 ("If you'll recall, a little over a year before the crash, Sutton was involved in a vehicular pursuit that resulted in his reprimand by MPD. That reprimand was for his failure to terminate a chase that resulted in a car accident involving property damage, and for using the 40 [sic] ops radio channel rather than the 4D main air radio channel to communicate about the pursuit. And as a result of these violations, Sutton was required to re-review the vehicular pursuit general order. So you know that.")

Mr. Hannon, in his own closing argument, appears to have mistakenly thought that Mr. Baset was referring to Slide 19 when he showed and referenced Slide 21, incorporating the slide seen by Defendant Sutton in his training. At most, it was only Mr. Hannon, and not the Government, who might have suggested to the jury (inaccurately) that the government suggested Slide 19 was an actual MPD training slide. The Government, admittedly confused by Mr. Hannon's mistake, did not attempt to explain it to the jury in rebuttal, nor was there any obligation

3

do so, as Defendant Sutton suggests in his motion. ECF No. 440 at 3 ("AUSA Ahmed Baset was silent in response to Mr. Hannon's challenge to the legitimacy of the slide…").

"Generally, the court considers three factors in assessing whether improper prosecutorial argument sufficiently prejudiced the defendant to require reversal of the judgment of conviction: [1] the closeness of the case, [2] the centrality of the issue affected by the error, and [3] the steps taken to mitigate the effects of the error." *United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017) (internal citations omitted). Here, even had there been Government error, the Court took appropriate steps to mitigate its effects such that dismissal would not be appropriate. Defendant Sutton first raised his mistaken understanding of Mr. Baset's demonstrative after closing arguments and before final jury instructions. Importantly, the Court found that there was no prejudice to the Defendant caused by the Government's argument and demonstrative, and agreed to give a curative instruction that would "remind [the jury] that opening statements and closings are not evidence, just like all the statements of lawyers are not evidence, and that demonstratives are not going back to the jury because they themselves are not evidence." Trial Tr. 12/15/22 at 22. The Court noted, even where error in closing argument was "blatant, our Court of Appeals as said a curative instruction is sufficient." *Id.* at 9. The Court also reiterated that given his finding that there was no prejudice, there was no need to specifically highlight any particular slide to the jury, especially given they were not in evidence. *Id.* at 23.

Given that Defendant Sutton's motion is predicated on his mistaken understanding of what occurred at trial, there is no basis to dismiss the Indictment, or otherwise compel further discovery from the Government. Notably, the Defendant does not cite any authority to "dismiss the indictment" under any theory hypothesized here. Nor does he cite any case that has authorized

4

discovery of government electronic data or an evidentiary hearing based on a claim (not even borne out on the facts here) that the government misstated the evidence in closing.

## II.     Conclusion

For the foregoing reasons, Defendant Sutton's motion should be denied.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                DC Bar No. 481052

By:   */s/ Elizabeth Aloi*
        AHMED BASET
        IL Bar No. 6304552
        RISA BERKOWER
        NY Bar No. 4536538
        ELIZABETH ALOI
        DC Bar No. 1015864
        Assistant United States Attorneys
        U.S. Attorney's Office for the District of Columbia
        601 D St., N.W.
        Washington, D.C. 20532
        Phone: (202) 252-7097 (Baset)
               (202) 252-6782 (Berkower)
               (202) 252-7212 (Aloi)
        Email: Ahmed.Baset@usdoj.gov
              risa.berkower@usdoj.gov
              Elizabeth.Aloi@usdoj.gov