UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-cr-598-PLF |
| TERENCE SUTTON and : | |
| ANDREW ZABAVSKY, : | |
| : | |
| Defendants. : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT ZABAVSKY'S MOTION FOR BRADY SANCTIONS

Defendant Zabavsky has asked the Court to determine whether the Government violated its discovery obligations as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), in connection with the trial testimony of Dr. Samantha Tolliver because the Government failed to disclose a report from a November 25, 2022, interview of Dr. Tolliver until December 23, 2022, after the verdict was returned. ECF No. 442. As set forth below, there was no *Brady* violation. That is, there was no prejudice to the defendants such that sanctions would be appropriate because there is no reasonable probability that the result of the trial would have been different had the disclosure been made earlier.

I. **Factual Background**

On November 28, 2022, a week after the Government rested its case on November 21, Defendant Sutton gave notice of his intention to call Dr. Tolliver in the Defendant's case. In anticipation of such defense testimony, the exact scope of which was not known to the United States, the Government interviewed Dr. Tolliver on November 25, 2022. Law enforcement generated notes and a report of the interview on November 29, 2022, and that material was provided to Government counsel on November 29, 2022. *See* Exhibit 1 (Memorandum of Interview and Notes). Given intervening trial demands, Government counsel inadvertently failed

1

to disclose the report to the defendants until December 23, 2022.[1] Dr. Tolliver was not otherwise interviewed by the prosecution team. She testified for the defendants on November 29, 2022, and December 1, 2022.

## II.     Standards Governing Defendant Zabavsky's Motion

Under *Brady v. Maryland*, the government must produce exculpatory information to the defense. *United States v. Bagley*, 473 U.S. 667, 675 (1985) (The government must "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."). The government's obligations under *Brady* include "an affirmative duty" to look for and produce exculpatory information if the government knows it may exist. *United States v. Safavian*, 233 F.R.D. 12, 17 (D.D.C. 2005). Where a defendant claims a violation of these rules, the D.C. Circuit has explained that the Court must conduct a three-party inquiry:

> A *Brady* violation has three parts. 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'

*United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). When assessing an alleged *Brady* violation, "even a grossly belated disclosure does not violate *Brady* unless the defendant suffers prejudice from the delay." *Id*. And, for these purposes, "[p]rejudice exists only if there is 'a reasonable probability that . . . the result of the proceeding would have been different' had the disclosure occurred earlier." *Id*. "[M]ere speculation" about such prejudice "is not sufficient to sustain a Brady claim." *Id.* (quotation marks omitted); *see id*. at 573-74 ("Hypothesizing that certain 'information, had it been disclosed to the

---

[1] The Government also disclosed a report from an interview of Metropolitan Police Department Officer Victor DePeralta on that date. This is mentioned in Defendant Zabavsky's motion but not otherwise discussed and does not appear to form the basis of his *Brady* claim.

2

defense, might have led [defense] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized' is disfavored." (quoting *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)).

### III. Argument

The notes taken by law enforcement from the interview of Dr. Tolliver suggest that a "test detected a small amount of acetone, not enough to impair" in Hylton-Brown's system at the time of his death. This information – that acetone was present – was in the D.C. Office of the Chief Medical Examiner's Forensic Toxicology report previously disclosed to the defense well in advance of trial on October 4, 2021. This was information that Dr. Tolliver herself could only have obtained from those same reports.

Ignoring that the acetone result was already produced long before trial, it is the December 23, 2022, disclosure of this information that forms the basis of Defendant Zabavsky's *Brady* claim. ECF No. 442 at 2. There was no *Brady* violation in the Government's disclosure such that sanctions or an evidentiary hearing are appropriate for at least two reasons. First, the new information in the disclosure was not exculpatory or impeaching. Second, Defendant Zabavsky cannot show prejudice as is required.

Preliminarily, Defendant Zabavsky inaccurately argues (at 5) that "the existence of acetone in Hylton-Brown was hidden from defendants." This is false. The report with the acetone results – the very report that Dr. Tolliver referenced in her November 25 interview – was produced. That is, defendants were in fact given the factual material that Defendant Zabavsky mistakenly argues was "hidden." At most, because the acetone was disclosed well in advance of trial, the only *new* information in Dr. Tolliver's interview was that (a) Dr. Tolliver was aware of that aspect of the report, and (b) she concluded any acetone present was "not enough to impair" Hylton-Brown.

3

Because Defendant Zabavsky does not argue (and could not credibly argue) that anything new was exculpatory or helpful to the defense, his entire motion proceeds on a false premise: his claim that "acetone" was not disclosed. Yet it was.

Moreover, the elements required to establish a *Brady* violation are not present, Defendant Zabavsky suggests the acetone-related information is exculpatory or impeachment information "given the importance of whether Hylton-Brown was impaired by alcohol or other drugs." ECF No. 442. At 5. But, the notes from Dr. Tolliver's interview state only that acetone, one particular chemical, was present at a level that could *not* impair Hylton-Brown. It tells one nothing about whether Hylton-Brown was, or was not, impaired the day of his death.[2] As such, even had the defense sought to elicit Dr. Tolliver's opinion on this, having the notes, reflecting that acetone was "not enough to impair," would not have advanced their case.

Moreover, at trial, Dr. Tolliver was not permitted to testify about the specific effects the chemicals found in Hylton-Brown's system might have had on Hylton-Brown; she could only generally opine about on what effect they might have had on a person. Trial. Tr. 12/1/22 at 28 ("You can talk about an individual general, normal person when the jury is here, not about this case -- not about [Dr. Tolliver's] opinion about Karon Hylton-Brown."). Thus, even had the Defendants been able to avail themselves of the information about acetone during their direct examination of Dr. Tolliver, the fact that a small amount of acetone was found in Hylton-Brown's system, at level that could not impair a person, would not have been admissible through Dr. Tolliver to show that Hylton-Brown was actually impaired.

---

[2] The fact that the agent handwritten notes contain the reference to acetone and the typed summary does not should be of no import, as interview summaries do not purport to contain every piece of information provided by a witness. Given the circumstances, and the relative insignificance of the information, it is reasonable not to have included it.

4

The defendant notes in his motion that other witnesses were permitted to opine on whether Hylton-Brown seemed impaired the day of his death. ECF No. 442 at 3-4. Unlike Dr. Tolliver, these individuals directly observed Hylton-Brown prior to his murder. There is no reason to think that their testimony would have been different with the knowledge that an amount of acetone so small it could not cause impairment might have been present in Hylton-Brown's system, as such a thing is not observable.

Given the extremely tenuous relationship between the acetone-information and Hylton-Brown's impairment, which had been disclosed earlier, the information would not have changed the verdict. Thus, Defendant Zabavsky has failed to show prejudice caused by the Government's delay. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) ("When a defendant challenges the government's alleged delay in disclosure of exculpatory evidence, the defendant must show a reasonable probability that an earlier disclosure would have changed the trial's result." (quotation marks omitted)).

In sum, despite the government's post-trial disclosure, the materials related to Dr. Tolliver were neither exculpatory nor did their absence work any prejudice on the defense. For these reasons, Defendant Zabavsky's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/Elizabeth Aloi*
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
ELIZABETH ALOI
DC Bar No. 1015864
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7097 (Baset)
　　　　(202) 252-6782 (Berkower)
　　　　(202) 252-7212 (Aloi)
Email: Ahmed.Baset@usdoj.gov
　　　　risa.berkower@usdoj.gov
　　　　Elizabeth.Aloi@usdoj.gov